UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:19-CR-116 |
| v. ) | |
| ) | JUDGE CORKER |
| DENNIS WAYNE FLETCHER ) | |
| ) | |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Dennis Wayne Fletcher and the defendant's attorney, Bryce McKenzie, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the superseding indictment:

   a) Count One, conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A).

   The punishment for this offense is as follows: A minimum mandatory 10 years up to life imprisonment, a maximum fine of $10,000,000.00, a minimum of 5 years up to life on supervised release, and a $100 mandatory assessment fee.

   b) Count Three, aiding or abetting another to possess a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A); 18 U.S.C. § 2.

   The punishment for this offense is as follows: minimum mandatory 5 years up to life imprisonment consecutive to all other counts in the indictment, a maximum $250,000.00 fine, up to 5 years supervised release, and a $100 special assessment fee.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this superseding indictment.

3. The defendant has read the superseding indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. As to Count One, the defendant agrees that each of the following elements of the crime must be proven beyond a reasonable doubt: (1) The defendant agreed with others to violate federal drug laws, specifically to distribute methamphetamine; (2) the defendant joined the conspiracy knowingly and intentionally; (3) the defendant participated in the conspiracy; and (4) the scope of conspiracy included 50 grams or more of methamphetamine. As to Count Three, the defendant agrees that each of the following elements of the crime must be proven beyond a reasonable doubt: (1) That the defendant knowingly possessed a firearm; and (2) the firearm was possessed in furtherance of a drug trafficking crime prosecutable in the United States.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a.) On June 30, 2019, officers with the Bristol Tennessee Police Department (BTPD) were dispatched to the McDonald's, located at 325 Pinnacle Parkway in Bristol, Tennessee in response to a request by a McDonald's employee for a check of a suspicious vehicle in the parking lot. Officers responded and spoke to the defendant, Dennis Fletcher, who was standing at the front of the vehicle with the hood of the vehicle raised. A white female later identified as Kenzie Greene was seated in

the passenger seat. The defendant stated that he could not find his identification card, but gave officers his name and social security number. While speaking with the defendant, officers noticed a pink and grey pill next to his foot and asked for consent to search his person. The defendant consented to the search, and officers found a few small baggies commonly used to package narcotics in his left front pocket. Officers then detained the defendant and had a canine officer perform an open-air sniff of the vehicle. The canine alerted on the odor of narcotics in the vehicle.

b.) Officers began to search the vehicle, and Greene advised that she had some syringes inside, which officers located under the passenger seat. Officers also located a black book bag behind the driver seat, which contained 8.36 ounces (237 grams) of methamphetamine, $4,300 cash, a loaded Taurus Millennium G2, 9mm caliber handgun, and a wallet with the defendant's identification card inside. Another container was found in the vehicle containing a scale, bong, baggies, marijuana, torch and a cell phone. Officers found an additional $420 cash in the center console of the vehicle.

c.) On July 26, 2019, the Tennessee Highway Patrol (THP) attempted to stop a silver Honda Prelude for improper display of registration. The driver did not stop upon receiving a signal from the officer and ultimately crashed. Officers saw the driver, a white male with long brown hair, approximately 6-feet in height, fleeing on foot from the crash scene. The front seat passenger, Kenzie Greene, exited the vehicle and was taken into custody. Greene advised that the driver was the defendant, Dennis Fletcher. Greene stated that defendant had given her a plastic baggie and told her to put it in her pants. Greene gave consent for officers to take the baggie, which was collected and determined to be 8.4 grams of methamphetamine. Officers searched the vehicle and found a 9mm round of ammunition under the driver seat and approximately $1,600 cash. Greene was Mirandized and gave a written statement indicating that the defendant was the driver of the car and

3

that she had been staying with him at the Red Roof Inn located at 100 Indian Center Ct., Kingsport, TN.

d.) Greene agreed to accompany officers to the Red Roof Inn and allowed them to enter the hotel room to search for the defendant. The defendant was not located inside the hotel room, but officers did observe the following items in plain view: a safe on the floor, a large sum of cash in the open drawer of the nightstand, a digital scale in an open bag on the floor, and three plastic containers containing a large quantity of a crystal-like substance. Greene's purse was in the hotel room, and she gave officers consent to get her identification card out of the purse. While searching Greene's purse, officers found a syringe, a cut straw and a small plastic baggie containing a crystal-like substance. Officers obtained a search warrant to search the hotel room and collected the items seen in the room including $3,282 cash and 4.674 lbs. (2.12 kilograms) methamphetamine. Two hotel employees identified the defendant out of a photo-lineup as the male who was staying in the hotel room with Greene.

e.) Greene was taken into custody and transported to jail. During intake, she admitted to a jailer that she had additional methamphetamine in her vagina. She was transported to Bristol Regional Hospital where another 5 grams of suspected methamphetamine was recovered from her vagina. While at the hospital, Greene stated to law enforcement that she did not know where the defendant got his methamphetamine from. She stated that the defendant left to pick up the methamphetamine while she was asleep at the hotel, and he had three containers of methamphetamine at the hotel when she woke up. Greene provided information that the defendant had spent large sums of cash on methamphetamine.

f.) On August 6, 2019, Greene was Mirandized and gave a written debrief to vice officers with the Sullivan County Sheriff's Office. Greene stated that she used to stay with another

4

methamphetamine trafficker at hotels around the Tri-cities. Greene advised that she began to stay with the defendant when that methamphetamine trafficker was arrested, approximately one month before. Greene stated that the defendant sells methamphetamine every day and purchases large quantities of methamphetamine at a time. Greene stated that when the defendant goes to buy or sell methamphetamine, he carries a gun and will leave large quantities of money with her at the hotel.

g.) The defendant and Greene were indicted by a federal grand jury on August 13, 2019. On August 20, 2019, officers with Sullivan Co. Sheriff's Office (SCSO), Johnson City Police Department (JCPD) and Bureau of Alcohol, Tobacco and Firearms (ATF) conducted a joint operation in order to apprehend them. Officers conducted surveillance throughout the day and located the defendant and Greene together in the parking lot of an apartment complex in Johnson City, Tennessee. The defendant and Greene were both observed walking back and forth to a red Honda Civic that the defendant had been observed driving in the past. The officers were aware that the defendant and Greene had outstanding arrest warrants. When the officers observed the defendant and Greene leaving the residence with Greene driving the red Honda Civic, they called THP officers to assist in a traffic stop and arrest. THP observed the defendant and Greene driving on South Roan Street in Johnson City and initiated a traffic stop. The vehicle stopped in an intersection, and the defendant jumped out of the car and began running on foot holding a black case. Officers pursued on foot. Although the defendant actively resisted arrest, officers were ultimately able to restrain him and place him under arrest. The black case was searched and found to contain a $21,286 cash. Greene was also arrested. An inventory search of the vehicle yielded a large amount of crystal substance believed to be methamphetamine. The methamphetamine was in a black backpack behind the driver seat in a plastic container. Inside the container were baggies

weighing 2.811 oz., 3.950 oz., 3.047 oz., 2.236 oz., 2.359 oz., 5.4g, and 1g. The total weight of the methamphetamine was approximately 14.692 oz. (416 grams).

  h.) The defendant was Mirandized and admitted that the vehicle was his. He also stated that following his release from jail and a half-way house earlier that year, he began selling methamphetamine. He stated that he worked his way up to selling approximately 1 kilogram per week. He stated that his supplier was from Georgia, but would not provide any names.

  i.) For the purposes of this plea agreement, the parties agree that the defendant entered a conspiracy to distribute and is accountable for a conservative estimate of at least 500 grams but less than 1.5 kilograms of actual methamphetamine.

  j.) For the purposes of this plea agreement, the parties agree that the 2-level enhancement for maintaining a premises for the purpose of manufacturing or delivering a controlled substance under U.S.S.G. § 2D1.1(b)(12) shall not apply in this case.

5.  The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

  a)  the right to plead not guilty;

  b)  the right to a speedy and public trial by jury;

  c)  the right to assistance of counsel at trial;

  d)  the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

  e)  the right to confront and cross-examine witnesses against the defendant;

  f)  the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

6

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any

7

Case 2:19-cr-00116-DCLC-CRW   Document 45   Filed 01/21/20   Page 7 of 11   PageID #: 158

conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

1/17/2020
Date

By: _____
EMILY M. SWECKER
Assistant United States Attorney

1/17/2020
Date

_____
DENNIS WAYNE FLETCHER
Defendant

1/17/2020
Date

_____
BRYCE MCKENZIE
Attorney for the Defendant

11